IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KAREN HEPP | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | **JURY TRIAL DEMANDED** |
| v. | : | |
| | : | |
| | : | |
| | : | |
| FACEBOOK, INC., IMGUR, INC., | : | No. 19-CV-4034 |
| REDDIT, INC., GIPHY, INC., | : | |
| WGCZ S.R.O. and DOES 1-10 | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN OPPOSITION TO
MOTION TO DISMISS BY DEFENDANT IMGUR, INC.**

**I.     INTRODUCTION**

Plaintiff Karen Hepp (hereafter "Plaintiff"), a Pennsylvania resident and public figure by virtue of her co-anchor position on Fox 29's "Good Day Philadelphia" television program, suffered a violation of her right of publicity when Defendant Imgur, Inc. (hereafter "Imgur") published an unauthorized, lascivious photograph of Plaintiff on its website. Specifically, the offending photograph was featured on Imgur's website under the heading "MILF," which is a derogatory and degrading slang acronym that refers to a sexually attractive woman with young children. *See* Hepp First Amended Complaint (hereafter "Hepp FAC") ¶47; Ex. "M."

For its part, Defendant Imgur, despite the fact that its website receives millions of hits per day and is globally ranked, remarkably claims that personal jurisdiction in Pennsylvania is

improper because it maintains no minimum contacts with the commonwealth, carries on no business activities there and does not advertise in Pennsylvania. *See* Hepp FAC ¶11; Ex. "A"; Schaff Decl. ¶¶2-9.

Based on the following facts and arguments, it will be made clear that specific jurisdiction applies as to Imgur because Imgur demonstrably and purposefully availed itself of the privilege of conducting activities within Pennsylvania.

## II. THIS COURT HAS JURISDICTION OVER DEFENDANT IMGUR

To determine whether personal jurisdiction exists over a party, a district court must conduct a two-step analysis. *See Kabbaj v. Simpson*, 547 F. App'x 84, 86 (3d Cir. 2013). First, the court must look to the forum state's long-arm statute to determine if personal jurisdiction is permitted over a defendant. *Id*. Second, the court must determine whether the exercise of jurisdiction violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id*.; *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998); *Vertoex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir. 1996).

Pennsylvania's long-arm statute permits the exercise of personal jurisdiction to the fullest limits of The Fourteenth Amendment. 42. Pa. Cons. Stat. § 5322(b); *Verotex*, 75 F.3d at 150. "Personal jurisdiction under the Due Process Clause depends upon 'the relationship among the defendant, the forum, and the litigation.'" *Kabbaj*, 547 F. App'x at 86 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). When the plaintiff's claim does not arise from the defendant's contacts with Pennsylvania, the court will exercise general jurisdiction only if the court determines that the defendant has "continuous and systematic" contacts with Pennsylvania. *See Id*. (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n.9, 416 (1984)). However, when the plaintiff's cause of action arises from the defendant's contacts with

Pennsylvania, we will exercise specific jurisdiction over the defendant if we find that he or she has sufficient minimum contacts with the forum and if the exercise of jurisdiction would "comport with traditional notions of fair play and substantial justice." *See Id*. at 86-87 (quoting *IMO Indus., Inc.*, 155 F.3d at 259).

To determine whether the defendant has minimum contacts with the jurisdiction, the court must look to whether the defendant has "purposefully avail[ed] [it]self of the privilege of conducting activities within [the forum]." *See Id*. at 87 (first and second alterations in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

### A.   THE *ZIPPO* SLIDING SCALE INTERNET TEST

The United States Court of Appels for the Third Circuit has established that personal jurisdiction may be exercised based on a defendant's internet presence. *See Ackourney v. Sonallas Custom Tailors*, 573 F. App'x 208, 211 (3d Cir. 2014); *see also Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1123-24 (W.D. Pa. 1997). Determining if personal jurisdiction exists requires the court to determine whether the defendant established minimum contacts through cyberspace. *See Ackourney*, 573 F. App'x at 211 (*citing Zippo*, 952 F. Supp. at 1121); *see also Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003) ("[*Zippo*] has become a seminal authority regarding personal jurisdiction based upon the operation of an internet website.").

When analyzing these cases, courts must look to the "nature and quality of commercial activity that an entity conducts over the internet." *See Zippo*, 952 F. Supp. at 1124. Accordingly, there exists a sliding scale that ranges from situations where a defendant uses an interactive commercial website actively to transact business with residents of a forum state (personal jurisdiction exists) to situations where a passive website merely provides information that is

accessible to users in the forum state (personal jurisdiction does not exist). *See Ackourney*, 573 F. App'x at 211.

To determine whether personal jurisdiction exists for situations between these extremes, the court must examine "the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id.*; *see also Toys "R" Us*, 318 F.3d at 452. Additionally, the court must determine whether a defendant "purposefully availed" itself of the privilege of engaging in activity in that state. *See Toys "R" Us*, 318 F.3d at 451. A defendant has "purposefully availed" itself if its website repeatedly attracts business from a forum or knowingly conducts business with the forum state's residents via its site. *Id.* at 452; *Doe v. Hesketh*, 15 F. Supp. 3d 586, 597 (E.D. Pa 2014) (stating that "the Zippo sliding scale requires some evidence of commercial interactivity with the forum state as where the Zippo defendants solicited subscribers and entered into contracts to furnish services to Pennsylvania customers"); *see also UHS of Delaware, Inc. v. United Health Services, Inc.*, Civ. No. 12-00485, 2013 WL 12086321, at 9 (M.D. Pa Mar. 26, 2013) ("[T]he hallmark of a commercial site is not, ... the users submission or receipt of information, but the clear presence of deliberate and repeated online business transactions through which the host provides a good or service in return for monetary compensation.").

In the instant case, it is clear that the quality and nature of Imgur's internet activity falls at the interactive end of the *Zippo* spectrum. Since Imgur actively transacts business over the internet by providing an interactive website that promotes goods and provides a service that directs "promoted" images (a/k/a "advertisements") to thousands of Pennsylvania residents, this Court's exercise of personal jurisdiction is proper. *See Burger King*, 471 U.S. at 473 ("We have emphasized that parties who reach out beyond one state and create continuing relationships and

4

obligations with the citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities.") (internal quotation marks omitted).

With respect to Imgur's website, it allows its users to perform the following activities: 1) become a registered Imgur user; 2) provide Imgur with an e-mail address and phone number (which can be used to trace residency); 3) purchase tangible goods promoted on Imgur's website; 4) be subjected to targeted, "promoted" images which are disguised advertisements and 5) post salacious images of innocent and unknowing Pennsylvania residents and then allow other users to make further derogatory and demeaning comments about said images. Furthermore, Imgur actively solicits advertisers, some of whom ostensibly include Pennsylvania-based businesses. *See* Hepp FAC ¶14-16; *Zippo*, 952 F. Supp. at 1126 (finding jurisdiction when a defendant used a website to "contact with 3,000 individuals and seven internet access providers in Pennsylvania"); *see also Law Sch. Admission Council, Inc., v. Tatro*, 153 F. Supp. 3d, 714, 720-21 (E.D. Pa Dec. 29, 2015) ("[Defendant's] website falls closer to the interactive end of the *Zippo* spectrum ... visitors can search for various resources ... [and] have the opportunity to purchase all these resources directly through the website."); *Square D Co. v. Scott Elec. Co.*, Civ. No. 06-00459, 2008 WL 4462298, at 8 (W.D. Pa. Sept. 30, 2008) (ruling that website that required customers to provide phone number and e-mail address to engage in commercial activity supports exercising of jurisdiction under *Zippo* analysis).

    **B.**    **IMGUR PURPOSELY AVAILED ITSELF**

Moreover, Imgur "purposefully availed" itself of the privilege of engaging in activity in Pennsylvania through continually providing saleable goods to thousands of Pennsylvania citizens via its Imgurian Store, targeting Pennsylvania citizens with "promoted" images (a/k/a advertisements) and soliciting Pennsylvania businesses to advertise on the Imgur website. *See*

Hepp FAC ¶¶14-19; *see* also *Law Sch. Admission Council*, 153 F. Supp. 3d at 720-21 (finding that a defendant had "purposefully availed" itself of activity in Pennsylvania when Pennsylvania residents made approximately 250 purchases on the defendant's website); *R.Q.C. Ltd. v. JKM Enters., Inc.*, Civ. No. 13-307, 2014 WL 4792148, at 4 (W.D. Pa. Sept. 23, 2014) ("[A] defendant that intentionally conducts business transactions over an interactive website with customers in the forum state has purposefully directed itself of the laws of that forum."); *Gentex Corp. v. Abbott*, 978 F. Supp. 2d 391, 398 (M.D. P. a. 2013) (finding that a defendant had "availed himself" to the forum state when "Defendant's website allowed Pennsylvania residents to make purchases through the site; it was actually utilized to purchase a product that was subsequently shipped into Pennsylvania").

Although Plaintiff, *supra*, provides numerous examples of Imgur "purposefully availing" itself of activities within Pennsylvania, Imgur summarily dismisses all such examples as jurisdictionally irrelevant. *See* Imgur Brief at 7. For example, Imgur ignores that fact that a simple vetting of the sample Pennsylvania-based search revealed a high number of postings from users who are obviously Pennsylvanians. Quite telling and absent from Mr. Schaaf's Declaration is a statement regarding how many Pennsylvanians are, in fact, Imgur users.[1]

Likewise, Imgur's reliance on *Hershey Co. v. Pagosa Candy Co.*, No. 1:07-CV-1363, 2008 WL 1730538, at *7 (M.D. Pa. Apr. 10, 2008), is misplaced, since the lack of indicia of the defendant purposefully availing itself of activities in Pennsylvania was specifically addressed by that court. In *Hershey*, the court found the defendant's Pennsylvania-directed activities to be *de minimis* and thus "fortuitous" at best. *Id*. at 8. Here, the *Pagosa* website is hardly comparable to

---

[1] Clearly Imgur intends to downplay the breadth and scope of its interactivity amongst Pennsylvania residents. As Imgur is of the most visited sites on the Internet, one is hard pressed to discount the high level of interactivity, time on site and degree to which many Pennsylvanians spend interacting on the site each day. *See* Hepp FAC, Ex "A."

that of Imgur's, a globally ranked, image-sharing behemoth that boasts millions of members and perhaps consumers as well who spend hours on the site per day. Imgur also takes pains to downplay the commercial impact of its Imgurian store on the purposeful-availment element, relying on *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018), for the proposition that "[o]ffering goods for sale on a national market that necessarily includes Pennsylvania is insufficient to show purposeful availment." *Id*. at 780; *See* Imgur Brief at 8. *Shuker* is a nuanced medical device case, not an Internet case, and its facts and logic are inapposite to an Internet-based, jurisdictional analysis based on a *Zippo* scale.

Additionally, Imgur skirts the issue of its solicitation of Pennsylvania-based advertisers while claiming that it "has never signed a contract with any company located in Pennsylvania" and "has never directed advertisements at Pennsylvania." *See* Schaaf Decl. ¶¶7-8. Read closely, Imgur's contractual affirmation does not literally mean that it lacks Pennsylvania-based advertisers. To the contrary, it implies that fact with a possible reservation that neither Imgur nor its representatives physically appeared in Pennsylvania to contract with a Pennsylvania-based advertiser. Similarly, denying that Imgur "directed advertisements at Pennsylvania" is not the same as denying that it solicits businesses that are based in Pennsylvania to advertise on its website. *See* Hepp FAC ¶14; Ex. "C."

### C. RETAINING JURISDICTION DOES NOT VIOLATE NOTIONS OF FAIR PLAY AND SUBSTANTIAL JUSTICE

Assuming, *arguendo*, the prevalence of minimum contacts, the Court must next consider whether the exercise of jurisdiction would otherwise comport with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The "traditional notions of fair play and substantial justice" are embodied in the Due Process Clause of the Fourteenth Amendment. *Id*. at 320.

The Supreme Court of the United States has identified the following factors that courts should consider in deciding whether jurisdiction complies with traditional notions of fair play and substantial justice: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate [and international] judicial system's interest in obtaining the most efficient resolution of controversies." *Burger King*, 471 U.S. at 477.

A weighing of the foregoing elements militates a finding that holding in Imgur squarely comports with traditional notions of "fair play and substantial justice." The burden on Imgur is low here given that Imgur has substantial financial resources and is one of the world's largest image-sharing websites. *See* Hepp FAC ¶11; Ex. "A." Pennsylvania has a substantial interest in adjudicating the dispute as it involves an aggrieved public figure who is a Pennsylvania resident. On Plaintiff's side, re-filing her Complaint in either Delaware or California would be financially burdensome and unnecessary in light of the other overwhelming factors favoring Pennsylvania's retention of the matter.  The impact on the interstate judicial system is neutral.

In response, Imgur argues that retaining jurisdiction in Pennsylvania is unfair and unjust because it would have to travel almost 3,000 miles (ostensibly for trial) to Pennsylvania. Not considered in its fairness analysis are the following facts: 1) Imgur has *pro hac* counsel; 2) this is an Internet case of first impression in this Circuit; 3) Imgur is a globally ranked company; and 4) Plaintiff, a prominent Pennsylvania resident and respected broadcaster, was unquestionably featured on its website under the moniker -- "MILF," a sexist, demeaning and derogatory term against women.[2]

---

[2] It is important to note that Imgur's Co-Defendant, Facebook, Inc., arguably the largest social media website in the world, has not raised lack of jurisdiction as a defense in its Motion to Dismiss Plaintiff's claims.

Alternatively, should the Court find that limited discovery is necessary to explore further the scope and nature of Imgur's contacts with Pennsylvania, Plaintiff would ask for 90 days within which to conduct paper discovery and take deposition testimony.

## III. PLAINTIFF'S CLAIMS IN HER AMENDED COMPLAINT STATE VALID CLAIMS AGAINST IMGUR

Dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is appropriate only when the complaint does not give a defendant fair notice of a legally cognizable claim and the basis on which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must plead facts showing that a violation is plausible, not just possible. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555).

In the case at issue, Plaintiff has made out plausible, colorable claims against Imgur based upon Pennsylvania's right of publicity statute, 42 Pa. Cons. Stat. § 8316, or, in the alternative, under its common law analogue. Moreover, and contrary to Imgur's assertions, Section 230 of the Communications Decency Act (hereafter "CDA") does not bar Plaintiff's claims as will be argued, *infra*.

### A. PLAINTIFF'S AMENDED COMPLAINT MAKES VALID CLAIMS UNDER 42 PA. CONS. STAT. § 8316

In her Amended Complaint, Plaintiff alleges that "[Imgur] [has] appropriated Plaintiff's likeness, which has commercial value, and used same for commercial purposes without Plaintiff's written consent." *See* Hepp FAC ¶60. One of the qualifying meanings of "commercial purpose" under Section 8316(e) includes "the purpose of advertising or promoting products, merchandise, goods or services of a business." *Id*. Based on the fecund record of Plaintiff's public persona and recognition on social media, she can hardly be considered a mere "member of the public" as Imgur would cast her. *See*, for example, Hepp FAC ¶¶51-55; Exs. Q-

T. By virtue of her instantly recognizable visage on Imgur, Plaintiff has (of course not wittingly or intentionally) promoted the services of Imgur, which involves, *de facto*, the dissemination and transfer of electronic files on the Internet, some of which are "promoted" by advertisers by Imgur's own admission. *See* Hepp FAC ¶14; Ex. "C." As to the "immunity provision" of Section 8316(d), applying a literal, "actual knowledge" standard to a likeness case (as is presented here) as opposed to a "name" identification case (wherein the identification would be obvious) makes little sense.3 While Imgur will undoubtedly argue every time that Plaintiff's identity is unknown, the facts and circumstances surrounding her notoriety should be weighed and considered before making judgment based upon this section alone. Plaintiff's allegations in her Amended Complaint with respect to Pennsylvania's right of publicity statute are articulated well enough to survive summary dismissal.

### B.  THE PENNSYLVANIA LEGISLATURE HAS NOT ABOLISHED THE COMMON LAW RIGHT OF PUBLICITY

Imgur insists that a decision from this Court, *Facenda v. N.F.L. Films, Inc.*, 488 F.Supp.2d 491 (E.D. Pa. 2007), *aff'd in part, vacated in part on other grounds*, 542 F.3d 1007 (3d. Cir. 2008), sounded the death knell for Pennsylvania's common law right of publicity, reasoning that it was impliedly abolished by the enactment of 42 Pa. Cons. Stat. § 8316. This proposition is simply wrong.4

---

3 If literal "actual knowledge" were required in every identification case, a defendant could simply rely on patent and self-serving denials of identity. *See* Schaaf Decl. ¶17. Consider an unauthorized photograph of LeBron James (sans name) appearing on Imgur. Imgur could rightfully argue, based on a literal reading of Section 8316(d), that it is nevertheless immunized from any liability because neither Imgur nor its agents recognized LeBron James as the meteoric and global personality that he is. Such a result is anathema to logic. A more reasonable interpretation of Section 8316(d) in the context of pure identification would be an adoption of the disjunctive "actual malice" test, which provides that a defamatory statement regarding a public figure must be shown to have been made "with knowledge that it was false or <u>with reckless disregard of whether it was false or not</u>." *See New York Times Co. v. Sullivan*, 376 U.S. 254, 280, 84 S. Ct. 710, 726, 11 L. Ed. 2d 686 (1964)(Emphasis added).

4 It must be noted that the District Court's comments with respect to Pennsylvania's common law right of publicity were neither affirmed nor addressed in the Third Circuit's opinion. *See Facenda*, 542 F.3d 1007, 1007-1033.

Pennsylvania has long recognized a common law right of publicity. *See Rose v. Triple Crown Nutrition, Inc.*, No. Civ.A.07–0056, 2007 WL 707348, at *2-3 (M.D.Pa. Mar. 2, 2007); *World Wrestling Fed'n Entm't Inc. v. Big Dog Holdings, Inc.,* 280 F.Supp.2d 413, 443–44 (W.D.Pa.2003); *Brockum Co. v. Blaylock*, 729 F.Supp. 438, 445 (E.D.Pa.1990); *Eagle's Eye, Inc. v. Ambler Fashion Shop, Inc.*, 627 F.Supp. 856, 862 (E.D.Pa.1985). "A defendant violates a plaintiff's right of publicity by 'appropriating its valuable name or likeness, without authorization, [and using] it to defendant's commercial advantage.'"*World Wrestling Fed'n*, 280 F.Supp.2d at 443–44 (quoting *Phila. Orchestra Ass'n v. Walt Disney Co.*, 821 F.Supp. 341, 349 (E.D.Pa.1993)). Such a right exists to redress the exact type of appropriation that occurred here.

This right grants a person an exclusive entitlement to control the commercial value of his or her name or likeness and to prevent others from exploiting it without permission. *Eagle's Eye Inc.*, 627 F.Supp. at 862. "[T]he right of publicity protects against commercial loss caused by appropriation of a name or likeness. In other words, the invasion of privacy by appropriation of name or likeness is a personal right created to protect one's privacy, while the right of publicity more closely resembles a property right created to protect commercial value." Rose, 2007 WL 707348, at *3.

At least one conflicting decision, *Lewis v. Marriott Int'l, Inc.*, 527 F. Supp. 2d 422 (E.D. Pa. 2007), has challenged the presumptiveness of the *Facenda* opinion and explains why its logic is faulty:

> As a matter of statutory construction, "statutes are not presumed to make changes in the rules and principles of common law or prior existing law beyond what is expressly declared in their provisions." *Commonwealth v. Miller*, 469 Pa. 24, 364 A.2d 886, 887 (1976); *Jahn v. O'Neill*, 327 Pa.Super. 357, 475 A.2d 837, 839 (1984) (applying same principle in civil case). Marriott points to no indicia in the text of section 8316 or its legislative history suggesting that it was intended as an exclusive remedy to replace the common-law cause of action of invasion of privacy by misappropriation of identity, and the Court finds none.

11

> Absent any indicia of such legislative intent, the Court is hesitant to rule that a common-law cause of action that has been expressly recognized by the Pennsylvania Supreme Court has been impliedly subsumed. See *Metro. Prop. & Liab. Ins. Co. v. Ins. Comm'r of Commonwealth*, 525 Pa. 306, 310, 580 A.2d 300 (1990) ("[A]n implication alone cannot be interpreted as abrogating existing law. The legislature must affirmatively repeal existing law or specifically preempt accepted common law for prior law to be disregarded.").
>
> *Id*. at 429.

Given the paucity of judicial decisions involving Section 8316, it is both unwise and irresponsible to rely on *Facenda* alone, a federal opinion, to overturn an established state common law principle that the Pennsylvania legislature has never seen fit to abrogate through express terms. *Id*., n. 8.

### C. PLAINTIFF'S CLAIMS ARE NOT BARRED BY SECTION 230 OF THE COMMUNICATIONS DECENCY ACT

Contrary to Imgur's central theory, Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c), does not bar all of Plaintiff's statutory and common law right-to-publicity claims, which are typically considered state-based intellectual property claims. While it is true that Section 230(c) of the CDA provides a safe-harbor for Internet service providers ("ISPs") and website operators for certain kinds of actions, there is another section of the CDA, Section 230(e)(2), wherein Congress expressly provided that "[n]othing in this section shall be construed to limit or expand any law pertaining to intellectual property."[5] *Id*.

The question as to whether Section 230(c) vitiates Section 230(e)(2) with respect to state-based intellectual property claims (i.e., state-based right-to-publicity) is one of first impression in the Third Circuit. Other circuits, most notably the Ninth Circuit via its seminal case of *Perfect*

---

[5] Interestingly, at least one legal scholar in the Internet law field has conceded that "[t]he [CDA] immunity does not extend to **intellectual property infringement**, federal criminal statutes, the Electronic Communications Privacy Act or to state law that does not conflict with Section 230. 147 U.S.C. § 230(e)(1)-(4) (Emphasis added). *See* Stuckey

*10, Inc. v. CCBill*, 488 F.3d 1102, 1118-19 (9th Cir. 2007), reasoned that because of a perceived lack of uniformity between states and lack of clarification of the term "intellectual property" in the CDA, the only reasonable way to construe the language of Section 230 would be to limit intellectual property to federal intellectual property only. *Id*. at 1118. However, several key cases emanating from the First and Second Circuits, notably *Doe v. Friendfinder Network, Inc.*, 540 F.Supp.2d 288 (D.N.H. 2008), and *Atlantic Recording Corp. v. Project Playlist, Inc.*, 603 F.Supp.2d 690 (S.D.N.Y. 2009), have expressly rejected the Ninth Circuit's ruling in *Perfect 10* in favor of a clearly mapped right-to-privacy exception vis-à-vis Section 230(e)(2). As the *Atlantic* court opined:

> The problem with Playlist's argument is that it lacks any support in the plain language of the CDA. In four different points in Section 230(e), Congress specified whether it intended a subsection to apply to local, state, or federal law. See 47 U.S.C. §§ 230(e)(1) ("any other Federal criminal statute"), (3) ("any State law" and "any State or local law"), (4) ("any similar State law") (emphasis added in all). It is therefore clear from the statute that if Congress wanted the phrase "any law pertaining to intellectual property" to actually mean "any federal law pertaining to intellectual property," it knew how to make that clear, but chose not to. Cf. *Barnhart v. Sigmon Coal Co*., 534 U.S. 438, 452, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002) ( "[I]t is a general principle of statutory construction that when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."); *United States v. Gonzales*, 520 U.S. 1, 5, 117 S.Ct. 1032, 137 L.Ed.2d 132 (1997) (holding that "any other term of imprisonment" includes both state and federal terms of imprisonment because "Congress did not add any language limiting the breadth of that word, and so we must read [the statute] as referring to all 'terms of imprisonment'").
>
> Moreover, the modifier "any" in Section 230(e)(2), employed without any limiting language, "amounts to 'expansive language [that] offers no indication whatever that Congress intended [a] limiting construction.'" *Doe v. Friendfinder Network, Inc.*, 540 F.Supp.2d 288, 299 (D.N.H.2008) (quoting *Harrison v. PPG Indus.*, 446 U.S. 578, 589, 100 S.Ct. 1889, 64 L.Ed.2d 525 (1980)). This conclusion is bolstered by the fact that, as discussed above, the "surrounding

and Ellis, *Internet and Online Law*, § 2.04, n. 13, (2019). The aforementioned co-author whose surname is "Ellis" refers to Robert Ellis, Esq., who is a member of Imgur's legal team.

> statutory language" supports the conclusion that Congress intended the word "any" to mean any state or federal law pertaining to intellectual property. See *ACLU v. Dep't of Def.*, 543 F.3d 59, 69 (2d Cir.2008) (holding that word "any" in statute "deserves an expansive application where the surrounding statutory language and other relevant legislative context support it").
>
> Because the plain language of the CDA is clear, as "any law" means both state and federal law, the Court need not engage in an analysis of the CDA's legislative history or purpose. See *Lee v. Bankers Trust Co.*, 166 F.3d 540, 544 (2d Cir.1999) ("It is axiomatic that the plain meaning of a statute controls its interpretation and that judicial review must end at the statute's unambiguous terms. Legislative history and other tools of interpretation may be relied upon only if the terms of the statute are ambiguous.") (internal citations omitted).
>
> Accordingly, I conclude, as a matter of law, that Section 230(c)(1) does not provide immunity for either federal or state intellectual property claims. See *Friendfinder Network, Inc.*, 540 F.Supp.2d 288 at 302 (rejecting the Ninth Circuit's decision in *Perfect 10* and holding that "[c]onsistent with its text, § 230(e)(2) applies simply to 'any law pertaining to intellectual property,' not just federal law."); *Murawski v. Pataki*, 514 F.Supp.2d 577, 591 (S.D.N.Y.2007) (reading 230(c)(1) to "immunize[ ] internet service providers from defamation and other, non-intellectual property, state law claims arising from third-party content"); *Gucci Am., Inc. v. Hall & Assocs.*, 135 F.Supp.2d 409, 415 (S.D.N.Y.2001) ("The instant claims are grounded in the law of intellectual property and, therefore, do not, on a motion to dismiss, implicate Section 230 immunity."); *Universal Commc'n Sys. v. Lycos, Inc.*, 478 F.3d 413, 422-23 (1st Cir.2007) (stating, in dicta, that "[c]laims based on intellectual property laws are not subject to Section 230 immunity.").

*Id.* at 703-4.

However, if the court's analysis in *Atlantic* is not fully convincing, in addition to the plain language of the statute, the purpose of the CDA suggests that Congress meant for the intellectual property exemption to include both state and federal laws. Here, Plaintiff's keen economic interest lies in the commercial value attributed to her identity. If Imgur is immune from liability, it has a disincentive to monitor it website for violations of an individual's right of publicity. For Imgur, what is important is its bottom line: protecting its brand, promoting its website and accumulating profits from its advertising revenue streams. However, to ensure that

the rights of the individuals, such as Plaintiff, who have dedicated time, effort, and money into ensuring that their collective goodwill and reputations are being adequately compensated for these undertakings, state intellectual property rights should be included in the intellectual property exception of the CDA. That Imgur can profit and exploit Plaintiff's image with putative immunity is an act of contorted, statutory legerdemain, a magic trick that this Court, in following the level reasoning of *Altantic* and *Friendfinder,* can finally reveal it for what it is. Plaintiff's claims have substantive merit and should be preserved for trial.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff, Karen Hepp, respectfully requests that Defendant Imgur, Inc.'s Motion for Dismissal under Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure be denied with prejudice.

Respectfully submitted,

COHEN FINEMAN, LLC

*/s/Samuel B. Fineman* (PA ID No. 75717)
Samuel B. Fineman, Esq.
Attorney for Plaintiff
1999 Marlton Pike E., Suite 4
Cherry Hill, NJ 08003
(856) 304-0699 – tel.
(856) 489-5088 – fax
sfineman@cohenfineman.com

Dated: March 16, 2020