IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KAREN HEPP** | : | |
| | : | |
| Plaintiff, | : | |
| | : | **JURY TRIAL DEMANDED** |
| v. | : | |
| | : | |
| **FACEBOOK, INC., IMGUR, INC.,** | : | No. 19-CV-4034 |
| **REDDIT, INC., GIPHY, INC.,** | : | |
| **WGCZ S.R.O. and DOES 1-10** | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN OPPOSITION TO
MOTION TO DISMISS BY DEFENDANT WGCZ S.R.O. AND IN SUPPORT OF
CROSS-MOTION TO AMEND THE FIRST AMENDED COMPLAINT**

**I.      INTRODUCTION**

Plaintiff Karen Hepp (hereafter "Plaintiff"), a Pennsylvania resident and public figure by virtue of her co-anchor position on Fox 29's "Good Day Philadelphia" television program, suffered a violation of her right of statutory and common law publicity when Defendant WGCZ S.R.O. (hereafter "WGCZ") published on its xnxx.com pornographic website and without her permission a lewd photograph of Plaintiff featured on its "milf" gallery 44/46. *See* Hepp First Amended Complaint (hereafter "Hepp FAC") ¶50; Ex. "P."

For its part, Defendant WGCZ now asserts that Plaintiff sued the wrong party, alleging that a different entity, namely NKL Associates S.R.O. (hereafter "NKL"), runs and operates the xnxx.com website where the photograph appeared. Notwithstanding its apparent lack of standing to assert additional defenses (since it is claiming that it is not a proper defendant), WGCZ argues

that personal jurisdiction in Pennsylvania is improper because it maintains no offices in Pennsylvania, has no employees in Pennsylvania, owns no real property in Pennsylvania, and holds no bank accounts or other assets in Pennsylvania. *See* Seifert Decl. ¶¶5,11.

On information and belief, NKL is a successor company to WGCZ, and both companies should be held in the instant litigation to account for their actions with respect to the xnxx.com website. To that end, Plaintiff, via cross-motion, asks this Court for leave to amend its First Amended Complaint to add a count for successor liability and to add NKL as an additional defendant in this action.

Moreover, because WGCZ challenges jurisdiction but nevertheless argues that it is not a proper party defendant, Plaintiff herein asserts that specific jurisdiction applies as to WGCZ, assuming, *arguendo*, it does operate the xnxx.com website, because WGCZ demonstrably and purposefully availed itself of the privilege of conducting activities within Pennsylvania.

**I.   PLAINTIFF SHOULD BE GIVEN LEAVE TO AMEND ITS AMENDED COMPLAINT TO ADD A COUNT FOR SUCCESSOR LIABILITY AND TO ADD NKL AS A PARTY**

Under Rule 15(a)(2), leave to amend should be "freely give[n] when justice so requires." Leave to amend may be denied on grounds including undue delay, bad faith, dilatory motive, prejudice, and futility. See *Robinson v. Phelan, Hallinan & Schmieg, LLP*, No. CIV.A. 12-151, 2015 WL 1400569, at *2 (E.D. Pa. Mar. 25, 2015). None of the above prohibitions apply to Plaintiff because it reasonably could not have anticipated WGCZ's arguments. There is scant public information regarding WGCZ's connection to xnxx.com, and that which does exist certainly permitted Plaintiff to rely upon it. *See* Fineman Decl.¶¶3-7. As a factual matter, Robert Seifert's own declaration is contradictory, as he claims NKL owned the xnxx.com website since 2014, but WGCZ's WIPO representations show otherwise. *See* Fineman Decl.¶12, Ex.A.

Moreover, both NKL and WGCZ have common officers and a common address. See Fineman Decl.¶10, Exs. A and D. There is a colorable case for successor liability here and Plaintiff should be afforded leave to add this count along with the new party, NKL. Discovery will bear out the full interconnectedness of these two entities. Plaintiff further requests that service of said Motion to Amend be effective upon NKL upon ECF service of local counsel, given that Robert Seifert is agent for process of both entities (WGCZ and NKL) and has had the benefit of local counsel for these motions. The alternative, requiring Plaintiff to serve NKL ostensibly via Hague Convention, will be costly, burdensome and time-consuming.

## II.     THIS COURT HAS JURISDICTION OVER DEFENDANT WGCZ

To determine whether personal jurisdiction exists over a party, a district court must conduct a two-step analysis. See *Kabbaj v. Simpson*, 547 F. App'x 84, 86 (3d Cir. 2013). First, the court must look to the forum state's long-arm statute to determine if personal jurisdiction is permitted over a defendant. *Id*. Second, the court must determine whether the exercise of jurisdiction violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.*; *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998); *Verotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir. 1996).

Pennsylvania's long-arm statute permits the exercise of personal jurisdiction to the fullest limits of The Fourteenth Amendment. 42. Pa. Cons. Stat. § 5322(b); *Verotex*, 75 F.3d at 150. "Personal jurisdiction under the Due Process Clause depends upon 'the relationship among the defendant, the forum, and the litigation.'" *Kabbaj*, 547 F. App'x at 86 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). When the plaintiff's claim does not arise from the defendant's contacts with Pennsylvania, the court will exercise general jurisdiction only if the court determines that the defendant has "continuous and systematic" contacts with Pennsylvania.

*See Id*. (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n.9, 416 (1984)). However, when the plaintiff's cause of action arises from the defendant's contacts with Pennsylvania, we will exercise specific jurisdiction over the defendant if we find that he or she has sufficient minimum contacts with the forum and if the exercise of jurisdiction would "comport with traditional notions of fair play and substantial justice." *See Id*. at 86-87 (quoting *IMO Indus., Inc.*, 155 F.3d at 259).

To determine whether the defendant has minimum contacts with the jurisdiction, the court must look to whether the defendant has "purposefully avail[ed] [it]self of the privilege of conducting activities within [the forum]." *See Id*. at 87 (first and second alterations in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

### A.   THE *ZIPPO* SLIDING SCALE INTERNET TEST

The United States Court of Appels for the Third Circuit has established that personal jurisdiction may be exercised based on a defendant's internet presence. *See Ackourney v. Sonallas Custom Tailors*, 573 F. App'x 208, 211 (3d Cir. 2014); *see also Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1123-24 (W.D. Pa. 1997). Determining if personal jurisdiction exists requires the court to determine whether the defendant established minimum contacts through cyberspace. *See Ackourney*, 573 F. App'x at 211 (*citing Zippo*, 952 F. Supp. at 1121); *see also Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003) ("[*Zippo*] has become a seminal authority regarding personal jurisdiction based upon the operation of an internet website.").

When analyzing these cases, courts must look to the "nature and quality of commercial activity that an entity conducts over the internet." *See Zippo*, 952 F. Supp. at 1124. Accordingly, there exists a sliding scale that ranges from situations where a defendant uses an interactive

commercial website actively to transact business with residents of a forum state (personal jurisdiction exists) to situations where a passive website merely provides information that is accessible to users in the forum state (personal jurisdiction does not exist). *See Ackourney*, 573 F. App'x at 211.

To determine whether personal jurisdiction exists for situations between these extremes, the court must examine "the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id.*; *see also Toys "R" Us*, 318 F.3d at 452. Additionally, the court must determine whether a defendant "purposefully availed" itself of the privilege of engaging in activity in that state. *See Toys "R" Us*, 318 F.3d at 451. A defendant has "purposefully availed" itself if its website repeatedly attracts business from a forum or knowingly conducts business with the forum state's residents via its site. *Id.* at 452; *Doe v. Hesketh*, 15 F. Supp. 3d 586, 597 (E.D. Pa 2014) (stating that "the Zippo sliding scale requires some evidence of commercial interactivity with the forum state as where the Zippo defendants solicited subscribers and entered into contracts to furnish services to Pennsylvania customers"); *see also UHS of Delaware, Inc. v. United Health Services, Inc.*, Civ. No. 12-00485, 2013 WL 12086321, at 9 (M.D. Pa Mar. 26, 2013) ("[T]he hallmark of a commercial site is not, ... the users submission or receipt of information, but the clear presence of deliberate and repeated online business transactions through which the host provides a good or service in return for monetary compensation.").

In the instant case, it is clear that the quality and nature of WGCZ's internet activity falls at the interactive end of the *Zippo* spectrum: Its website, xnxx.com, "has recently been rated the 181st most visited site globally, the 157th most visited site in the United States, and receives about 16.3 million unique visitors per month in the United States." *See* Fineman Decl.¶8, Ex.C.

Since WGCZ actively transacts business over the internet by providing an interactive pornographic website that allows users to download millions of pornographic images and videos (ostensibly for many Pennsylvania residents), this Court's exercise of personal jurisdiction is proper. *See Burger King*, 471 U.S. at 473 ("We have emphasized that parties who reach out beyond one state and create continuing relationships and obligations with the citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities.") (internal quotation marks omitted). *See Zippo*, 952 F. Supp. at 1126 (finding jurisdiction when a defendant used a website to "contact with 3,000 individuals and seven internet access providers in Pennsylvania"); *see also Law Sch. Admission Council, Inc., v. Tatro*, 153 F. Supp. 3d, 714, 720-21 (E.D. Pa Dec. 29, 2015) ("[Defendant's] website falls closer to the interactive end of the *Zippo* spectrum ... visitors can search for various resources ... [and] have the opportunity to purchase all these resources directly through the website."); *Square D Co. v. Scott Elec. Co.*, Civ. No. 06-00459, 2008 WL 4462298, at 8 (W.D. Pa. Sept. 30, 2008) (ruling that website that required customers to provide phone number and e-mail address to engage in commercial activity supports exercising of jurisdiction under *Zippo* analysis).

**B.     WGCZ PURPOSELY AVAILED ITSELF**

Moreover, WGCZ "purposefully availed" itself of the privilege of engaging in activity in Pennsylvania through continually providing an interactive platform by which Pennsylvanians upload and download millions of pornographic images and videos. *See* Fineman Decl.¶8, Ex.C.; *see also Law Sch. Admission Council*, 153 F. Supp. 3d at 720-21 (finding that a defendant had "purposefully availed" itself of activity in Pennsylvania when Pennsylvania residents made approximately 250 purchases on the defendant's website); *R.Q.C. Ltd. v. JKM Enters., Inc.*, Civ. No. 13-307, 2014 WL 4792148, at 4 (W.D. Pa. Sept. 23, 2014) ("[A] defendant that intentionally

conducts business transactions over an interactive website with customers in the forum state has purposefully directed itself of the laws of that forum."); *Gentex Corp. v. Abbott*, 978 F. Supp. 2d 391, 398 (M.D. P. a. 2013) (finding that a defendant had "availed himself" to the forum state when "Defendant's website allowed Pennsylvania residents to make purchases through the site; it was actually utilized to purchase a product that was subsequently shipped into Pennsylvania"). Presumably, WGCZ tracks and retains metrices on how many "hits," downloads and click-throughs it receives for its Pennsylvania-based subscribers and viewers.

### C. RETAINING JURISDICTION DOES NOT VIOLATE NOTIONS OF FAIR PLAY AND SUBSTANTIAL JUSTICE

Assuming, *arguendo*, the prevalence of minimum contacts, the Court must next consider whether the exercise of jurisdiction would otherwise comport with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The "traditional notions of fair play and substantial justice" are embodied in the Due Process Clause of the Fourteenth Amendment. *Id*. at 320.

The Supreme Court of the United States has identified the following factors that courts should consider in deciding whether jurisdiction complies with traditional notions of fair play and substantial justice: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate [and international] judicial system's interest in obtaining the most efficient resolution of controversies." *Burger King*, 471 U.S. at 477.

A weighing of the foregoing elements militates a finding that holding in WGCZ squarely comports with traditional notions of "fair play and substantial justice." The burden on WGCZ is low here given that it has substantial financial resources as it runs one of the world's largest websites, if not the largest pornographic websites, xnxx.com. *See See* Fineman Decl.¶8, Ex.C.

Pennsylvania has a substantial interest in adjudicating the dispute as it involves an aggrieved public figure who is a Pennsylvania resident.

Alternatively, should the Court find that limited discovery is necessary to explore further the scope and nature of WGCZ's contacts with Pennsylvania, Plaintiff would ask for 90 days within which to conduct paper discovery and take deposition testimony.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff, Karen Hepp, respectfully requests that Defendant WGCZ's Motion to Dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure be denied with prejudice.

Respectfully submitted,

COHEN FINEMAN, LLC

*/s/Samuel B. Fineman* (PA ID No. 75717)
Samuel B. Fineman, Esq.
Attorney for Plaintiff
1999 Marlton Pike E., Suite 4
Cherry Hill, NJ 08003
(856) 304-0699 – tel.
(856) 489-5088 – fax
sfineman@cohenfineman.com

Dated: June 11, 2020