**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KAREN HEPP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 19-cv-4034-JMY |
| | § | |
| META PLATFORMS, INC. | § | |
| f/k/a FACEBOOK, INC. | § | |
| | § | |
| Defendant. | | |

**DEFENDANT META PLATFORMS, INC f/k/a FACEBOOK, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

I. INTRODUCTION ....................................................................................................1

II. SUMMARY OF PLAINTIFF'S ALLEGATIONS ....................................................2

III. ARGUMENT ....................................................................................................3

A. Applicable Standard of Review ....................................................................3

B. Plaintiff Has Not Alleged and Cannot Allege Facts to Support Her Claim that MPI Violated Her Statutory Right of Publicity. ..............................................4

1. Plaintiff Has Not Alleged that MPI Used Plaintiff's Image for Its Own Commercial or Advertising Purposes. ...............................................4

2. As a "Communications Medium" without "Actual Knowledge" of the Unauthorized Use, MPI is Immune From Liability Under the Pennsylvania Act....................................................................6

C. Plaintiff's Common-Law Right-of-Publicity Claim Has Been Abrogated..............8

D. Plaintiff's Allegations Would Fail to Support Her Common-Law Right-of-Publicity Claim Even If It Had Not Been Abrogated. ............................................9

IV. CONCLUSION....................................................................................................11

**TABLE OF AUTHORITIES**

**Cases**

*AFL Phila. LLC v. Krause*,
639 F. Supp. 2d 512 (E.D. Pa. 2009) .......... 9

*Almeida v. Amazon.com, Inc.*,
456 F.3d 1316 (11th Cir. 2006) .......... 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 3

*Cabaniss v. Hipsley*,
151 S.E.2d 496 (Ga. Ct. App. 1966) .......... 10, 11

*Cornette v. Graver*,
No. 3:19-cv-219, 2020 WL 1643370 (W.D. Pa. Apr. 2, 2020) .......... 6

*Doe v. Backpage.com, LLC*,
817 F.3d 12 (1st Cir. 2016) .......... 5, 11

*Evancho v. Fisher*,
423 F.3d 347 (3d Cir. 2005) .......... 4

*Evans v. Wurkin Stiffs, Inc.*,
No. 15-61934-CIV-COHN/SELTZER, 2016 WL 8793339 (S.D. Fla. Mar. 21, 2016) .......... 7

*Facenda v. N.F.L. Films, Inc.*,
488 F. Supp. 2d 491 (E.D. Pa. 2007),
*aff'd in part*, *vacated in part on other grounds*, 542 F.3d 1007 (3d Cir. 2008) .......... 8, 9

*Gabriel v. Giant Eagle, Inc.*,
124 F. Supp. 3d 550 (W.D. Pa. 2015) .......... 10

*Kelly v. Peerstar LLC*,
No. 3:18-cv-126, 2020 WL 5077940 (W.D. Pa. Aug. 26, 2020),
*mot. to certify denied*, No. 3:18-cv-126, 2021 WL 4078919 (W.D. Pa. Sept. 8,2021) .......... 8

*Newcombe v. Adolf Coors Co.*,
157 F.3d 686 (9th Cir. 1998) .......... 11

*Sahoury v. Meredith Corp.*,
No. 11-5180 (KSH), 2012 WL 3185964 (D.N.J. Aug. 2, 2012) ........................................... 10

*Saliba v. Att'y Gen. of U.S.*,
828 F.3d 182 (3d Cir. 2016) ................................................................................ 4

*Sternlicht v. Sternlicht*,
876 A.2d 904 (Pa. 2005) ................................................................................ 8

*The Choice Is Yours, Inc. v. The Choice Is Yours*,
No. 2:14-cv-01804, 2015 WL 5584302 (E.D. Pa. Sept. 22, 2015) ........................................ 9

*U.S. Claims, Inc. v. Flomenhaft & Cannata, LLC*,
519 F. Supp. 2d 515 (E.D. Pa. 2006) ................................................................ 4

*United States v. Texas*,
507 U.S. 529 (1993) ................................................................................ 8

*Wallace v. MediaNews Gr., Inc.*,
No. 12-CV-0872, 2013 WL 214632 (M.D. Pa. Jan. 18, 2013),
*aff'd in relevant part*, *vacated in part*, 568 F. App'x 121 (3d Cir. 2014) ................................ 5

*Worthy v. Carroll*,
No. 02-6882, 2003 WL 25706359 (E.D. Pa. July 16, 2003) ............................................ 10

**Statutes**

42 Pa. Cons. Stat. § 8316(a) ................................................................................ 5, 6

42 Pa. Cons. Stat. § 8316(d) ................................................................................ 1, 6, 7

**Rules & Regulations**

Fed. R. Civ. P. 12(b)(6) ................................................................................ 3, 4

**Other Authorities**

Restatement (Second) of Torts § 652C (Am. L. Inst. 1977) .............................................. 9, 10

# I. INTRODUCTION

Plaintiff Karen Hepp ("Plaintiff" or "Hepp") claims her right of publicity was violated when her image appeared without her permission in an ad for the third party FirstMet dating app. Importantly for this motion, Plaintiff did not bring her right of publicity claims against FirstMet, the entity that used her image to promote its services. Instead, she sued Defendant Meta Platforms, Inc. ("MPI"), formerly known as Facebook Inc., operator of the Facebook social networking platform that FirstMet used to distribute Plaintiff's image. Plaintiff has not alleged, and cannot allege, that MPI had anything to do with FirstMet's decision to use Plaintiff's image. Even taking Plaintiff's claims as true, MPI was at best a passive distributor of the FirstMet ad that contained Plaintiff's image. Moreover, Plaintiff has not alleged any facts showing that MPI benefited from *FirstMet's use of Plaintiff's likeness*, as opposed to the hundreds of millions of other images uploaded to the Facebook service by third parties every day. In short, Plaintiff is not pursuing her claims against the intentional distributor of her image, but against a passive platform that had no actual knowledge of and gained no benefit from FirstMet's use of Plaintiff's image. Plaintiff has repeatedly targeted her allegations against the wrong entity, and that choice is fatal to her claims.

Plaintiff asserts two claims against MPI: (1) violation of her statutory right of publicity under 42 Pa. Cons. Stat. § 8316(d), and (2) violation of her right of publicity under Pennsylvania common law. As shown below, neither body of law supports Plaintiff's attempt to hold an online platform liable for the actions of a third-party advertiser. First, MPI did not use Plaintiff's image for its own benefit. Second, as a "communications medium" without "actual knowledge" of the alleged unauthorized use, MPI is immune from liability under Pennsylvania's right-of-publicity statute. Third, that statute has abrogated Plaintiff's right-of-publicity claim under Pennsylvania common law. And fourth, even if Plaintiff's common-law claim survived abrogation, Plaintiff has failed to allege facts constituting an actionable violation of that right by MPI.

Plaintiff has had three attempts to assert plausible claims against MPI, but she remains unable to correct pleading deficiencies. Because further amendment would be futile, this Court should dismiss Plaintiff's claims against MPI with prejudice.

## II. SUMMARY OF PLAINTIFF'S ALLEGATIONS

In the Second Amended Complaint, Plaintiff alleges the following facts, which MPI takes as true solely for the purposes of this Motion: MPI owns and operates Facebook.com, a well-known social media service. *See* Second Am. Compl. ¶ 8. As is common with such services, MPI permits its users to post and share messages, photos, videos, and other content on its platform. *Id.* ¶ 8, 20, Ex. C. MPI also allows businesses to create, post, and share sponsored ads promoting their products and services on the Facebook platform. *See, e.g.*, *id*., Ex. B.

Plaintiff is currently a television news anchor in Philadelphia. *Id.* ¶¶ 9-10. Approximately two years ago, she discovered that a photo of her was being used by third parties in online ads without her consent. *Id.* ¶ 15. Plaintiff concluded that the photo was taken by a security camera in a New York City convenience store without her knowledge. *Id.* ¶¶ 15-16, Ex. A. The photo was featured in an ad promoting the FirstMet dating app that appeared on the Facebook platform. *Id.* ¶ 18, Ex. B. In the FirstMet ad, Plaintiff's image is shown alongside that of another unidentified woman.[1] *Id*. The ad includes the term "Sponsored" in the upper left corner, referencing the fact that the content was sponsored by the entity promoting its services. *Id*. A copy of the ad is attached to the Second Amended Complaint and reproduced below:

[1] The lower portion of the image attached to the Second Amended Complaint displays a different ad apparently placed by a different third party. *See id.*




*Id.* Ex. B.

On September 4, 2019, Plaintiff filed her original Complaint against MPI, not FirstMet. *See generally* Compl. On February 18, 2020, after MPI moved to dismiss the original Complaint for, among other things, her failure to state a claim, Plaintiff filed an Amended Complaint adding factual allegations but still failing to state plausible claims that MPI violated her statutory and common-law publicity rights. *See generally* Am. Compl. Now, on her third attempt, Plaintiff has again failed to allege that MPI played an actionable role in the distribution of her image, and failed to allege that MPI used her image to advertise its services. As a result, Plaintiff has no support for her request for actual damages, reputational damages, and MPI's profits in an amount exceeding $10,000,000. *Id.*, Prayer for Relief ¶ 4.

## III. ARGUMENT

### A. Applicable Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level" and the plaintiff must offer more than a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In evaluating the sufficiency of a claim, courts "first . . . tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Courts then identify the allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss." (citation omitted)). Finally, courts "assume the[] veracity [of *well-pleaded* factual allegations] and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. When courts dismiss a claim, it is not required to grant plaintiff leave to amend the complaint where doing so would be futile. *U.S. Claims, Inc. v. Flomenhaft & Cannata, LLC*, 519 F. Supp. 2d 515, 526 (E.D. Pa. 2006) (holding that an amendment is futile if it would not cure the deficiency in the original complaint).

In ruling on a Rule 12(b)(6) motion to dismiss, courts "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Saliba v. Att'y Gen. of U.S.*, 828 F.3d 182, 189 (3d Cir. 2016) (citation omitted).

**B. Plaintiff Has Not Alleged and Cannot Allege Facts to Support Her Claim that MPI Violated Her Statutory Right of Publicity.**

Plaintiff's statutory right-of-publicity claim fails for at least two reasons: First, she has not alleged facts demonstrating that MPI "used" her image for commercial or advertising purposes; and second, as a communications medium without actual knowledge of the allegedly unauthorized use, MPI is immune from liability under the statute.

**1. Plaintiff Has Not Alleged that MPI Used Plaintiff's Image for Its Own Commercial or Advertising Purposes.**

Pennsylvania's statutory right-of-publicity law provides that "[a]ny natural person whose name or likeness has commercial value and is used for any commercial or advertising purpose

without the written consent of such natural person . . . may bring an action." 42 Pa. Cons. Stat. § 8316(a) (the "Pennsylvania Act"). Yet, Plaintiff has not alleged any facts demonstrating that MPI "used" her image for a commercial or advertising purpose within the meaning of the Pennsylvania Act—nor can she.

In *Cornette v. Graver*, No. 3:19-cv-219, 2020 WL 1643370 (W.D. Pa. Apr. 2, 2020), the court addressed the definition of "use" under Section 8316(a) of the Pennsylvania Act. In that case, the defendant was accused of violating the plaintiff's statutory right of publicity by allowing a third party to sell a t-shirt bearing an unauthorized use of plaintiff's image on defendant's e-commerce platform. The court concluded that to "use" a person's image for commercial or advertising purposes, the defendant must have "employed his likeness or made use or taken advantage of it" or "take[n] some sort of action with respect to the likeness at issue." *Id.* at *11. That is, the term "used" in the Pennsylvania Act requires more than providing an e-commerce platform on which another party sold a product bearing the unauthorized image. *Id*.

Likewise here, Plaintiff has alleged only that her image was included in a third-party ad to promote its dating service—not an ad promoting the Facebook service or any other of MPI's services. *See*, *e.g.*, *Doe v. Backpage.com, LLC*, 817 F.3d 12, 26 (1st Cir. 2016) (finding no misappropriation of likeness where the publisher did not use pictures to advertise their own services); *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1324–26 (11th Cir. 2006) (finding that Amazon's use of an image of the front cover of a book that included allegedly unlawful use of the plaintiff's image was not a commercial use); *cf. Wallace v. MediaNews Gr., Inc.*, No. 12-CV-0872, 2013 WL 214632, at *4 (M.D. Pa. Jan. 18, 2013) (finding that a newspaper's use of a photograph to illustrate a newsworthy article did not state a misappropriation claim where the plaintiff did not allege a sufficient commercial purpose), *aff'd in relevant part*,

*vacated in part*, 568 F. App'x 121 (3d Cir. 2014). Thus here, as in *Cornette*, MPI did not "use" the Plaintiff's image, and Plaintiff has not asserted any facts showing otherwise. Plaintiff's failure to establish the element of use in Section 8316(a) defeats her statutory right of publicity claim.

**2. As a "Communications Medium" without "Actual Knowledge" of the Unauthorized Use, MPI is Immune From Liability Under the Pennsylvania Act.**

Even if MPI had "used" Plaintiff's image for "commercial or advertising purposes," Plaintiff's statutory claim still fails because MPI is protected under the immunity provision of the Pennsylvania Act. That provision states that no corporation "in the business of . . . publishing or disseminating material for commercial or advertising purposes by any communications medium shall be held liable under [the Pennsylvania Act] unless they had actual knowledge of the unauthorized use of the name or likeness of a [plaintiff]." 42 Pa. Cons. Stat. § 8316(d). MPI meets both criteria for immunity under the Act.

First, part of MPI's business is to disseminate material created by third parties for their own commercial or advertising purposes through a communications medium, *i.e.* the Facebook platform. Plaintiff's allegations make clear that the ad at issue was created to promote FirstMet's dating app, and not MPI's services. *See* Second Am. Compl. at Ex. B. This necessarily means that Plaintiff's claim against MPI is based entirely on the allegations that the FirstMet ad was published and disseminated using the Facebook platform as the communications medium. *Id.* ¶ 8 and Ex. B.

Second, although "actual knowledge" is required under the Act to circumvent MPI's immunity, Plaintiff did not allege that MPI *actually knew* that her image was used in the FirstMet ad without her consent. Nor could she. Plaintiff does not claim that the ad includes her name or her profession or that she contacted MPI to inform it that FirstMet was not authorized to use her image. Instead of alleging actual knowledge, Plaintiff attempts to plead around this requirement

by alleging that MPI "knew, or should have known, based upon Plaintiff's notoriety and fame, that the Photo depicted Plaintiff and no one else." *See* Second Am. Compl. ¶ 29. But Plaintiff's allegation ignores the plain language of the statutory exception by substituting constructive knowledge for actual knowledge. Equally unavailing is Plaintiff's attempt to narrow the exception to require only that MPI recognize the Plaintiff because of her alleged fame. Even if MPI had correctly identified Plaintiff from viewing the FirstMet ad—which MPI vigorously disputes—that recognition, standing alone, would not satisfy the statutory requirement. In order to be actionable, MPI's alleged recognition of Plaintiff would have to be accompanied by the further knowledge that FirstMet's use of her image was unauthorized. *See Evans v. Wurkin Stiffs, Inc.*, No. 15-61934-CIV-COHN/SELTZER, 2016 WL 8793339, at *8 (S.D. Fla. Mar. 21, 2016) (finding that despite the notoriety of the Chubby Checker stage name, plaintiff had not alleged facts to support that defendants had actual knowledge that plaintiff's name was used without consent). Plaintiff has failed to allege any facts suggesting that MPI "had actual knowledge *of the unauthorized use*." *See* 42 Pa. Cons. Stat. § 8316(d) (emphasis added). Plaintiff's attempt to re-write the immunity provision of the Pennsylvania Act cannot cure this glaring deficiency.

At least one court has interpreted the Pennsylvania Act's immunity provision in a case presenting allegations analogous to those presented here. In *Evans v. Wurkin Stiffs*, defendants Amazon, Macy's, and Nordstrom advertised on their websites the sale of a third-party product that allegedly violated the plaintiff's right of publicity. 2016 WL 8793339, at *8. The court dismissed the plaintiff's right-of-publicity claim, finding the defendants were squarely within the scope of § 8316(d) because part of their business was to disseminate the ad at issue for commercial or advertising purposes, and they did so without actual knowledge that the plaintiff's name was used in the ad without consent. *Id.* Here, MPI operates a platform that delivers ads to its users. The ad

itself appears on the platform to promote FirstMet's services. *See* Second Am. Compl., Ex. B (showing the advertisement at issue promotes the services of FirstMet). Not surprisingly, MPI had no actual knowledge that FirstMet's use of Plaintiff's image was unauthorized, and Plaintiff has not plausibly alleged facts suggesting otherwise.

Because MPI has met each of the elements for immunity under the Pennsylvania Act, Plaintiff's statutory right-of-publicity claim should be dismissed with prejudice.

**C. Plaintiff's Common-Law Right-of-Publicity Claim Has Been Abrogated.**

Plaintiff also claims a violation of her right of publicity under Pennsylvania common law, but that claim has been abrogated by the Pennsylvania Act. A common-law principle is abrogated when a statute "speaks directly" to the question addressed by the common law. *United States v. Texas*, 507 U.S. 529, 534 (1993). When the statute provides a comprehensive legislative scheme, it supersedes the prior common-law principles dealing with the same subject matter. *Sternlicht v. Sternlicht*, 876 A.2d 904, 912 (Pa. 2005). Moreover, a common-law doctrine cannot continue to develop in a manner inconsistent with a statute on the same subject. *Id*.

The Pennsylvania Act involves the same subject matter covered by the common-law right of publicity in Pennsylvania—the unauthorized use of a person's name or likeness. *See Kelly v. Peerstar LLC*, No. 3:18-cv-126, 2020 WL 5077940, at *9 (W.D. Pa. Aug. 26, 2020), *mot. to certify denied*, No. 3:18-cv-126, 2021 WL 4078919 (W.D. Pa. Sept. 8,2021). One critical difference between the Act and the common law is that the Act applies only to commercial misappropriation and the common law has no such limitation. *Id*. This difference makes the common law inconsistent with the Act's legislative scheme. *Id*. "Because the Pennsylvania Legislature has enacted a comprehensive legislative scheme on the unauthorized use of a person's name or likeness that is different than the common law scheme, the Legislature abrogated the Pennsylvania common law claim for misappropriation of name or likeness." *Id.*; *see also Facenda v. N.F.L. Films, Inc.*,

488 F. Supp. 2d 491, 513 (E.D. Pa. 2007), *aff'd in part*, *vacated in part on other grounds*, 542 F.3d 1007 (3d Cir. 2008); *The Choice Is Yours, Inc. v. The Choice Is Yours*, No. 2:14-cv-01804, 2015 WL 5584302, at *4 (E.D. Pa. Sept. 22, 2015) (noting that "the Third Circuit, in dicta, appeared to concur" with the district court in *Facenda* that the common-law cause of action has been subsumed).

Accordingly, Plaintiff's claim that MPI violated her common-law right of publicity must be dismissed, as that claim has been subsumed and no longer exists.

### D. Plaintiff's Allegations Would Fail to Support Her Common-Law Right-of-Publicity Claim Even If It Had Not Been Abrogated.

Even if Plaintiff's common-law right-of-publicity claim had not been abrogated by the Pennsylvania Act, Plaintiff's claim still would fail because, according to her own allegations, MPI distributes content for others and thus did not use Plaintiff's likeness for its own benefit. *See* Second Am. Compl. at ¶ 8 and Ex. B. Pennsylvania courts refer to the Restatement (Second) of Torts § 652C (Am. L. Inst. 1977) ("Section 652C") to define the common-law right of publicity. *See AFL Phila. LLC v. Krause*, 639 F. Supp. 2d 512, 530 (E.D. Pa. 2009) (noting that Pennsylvania courts rely on the Restatement (Second) of Torts definition of privacy torts when analyzing right of publicity). Section 652C provides that "[o]ne who appropriates to h[er] own use or benefit the name or likeness of another is subject to liability . . . for invasion of . . . privacy." Restatement (Second) of Torts § 652C, cmt. d. The Restatement, and courts interpreting it, require that the plaintiff allege some benefit from the "use" of her name or likeness that is not merely incidental. *Id*. Comment d to the Restatement (Second) of Torts § 652C, explains "incidental" use as follows:

> [The] value of his likeness [is not] appropriated when it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity. . . .
>
> The fact that the defendant is engaged in the business of publication, for example of a newspaper, out of which he makes or seeks to make a profit, is not enough to

> make the incidental publication a commercial use of the name or likeness. Thus a newspaper, although it is not a philanthropic institution, does not become liable under the rule stated in this Section to every person whose name or likeness it publishes.

*Id.*

Plaintiff pleads no facts to support a plausible inference that MPI used her likeness to take advantage of her reputation or prestige for its own benefit. *Worthy v. Carroll*, No. 02-6882, 2003 WL 25706359, at *4 (E.D. Pa. July 16, 2003). Rather, Plaintiff alleges generally that MPI: (1) "appropriated [her] likeness, which has commercial value, and used same for commercial purposes"; and (2) "appropriated [her] valuable likeness . . . and used it to its commercial advantage." Second Am. Compl. ¶¶ 28, 36. These threadbare pleadings are precisely the type of conclusory allegations that courts have rejected as insufficient to plead appropriation for one's own use or benefit. *See, e.g.*, *Gabriel v. Giant Eagle, Inc.*, 124 F. Supp. 3d 550, 572-73 (W.D. Pa. 2015) (dismissing with prejudice publicity claim because "it [wa]s clear that there [we]re no facts supporting the contention that Plaintiff's name had any particular value" to the defendants); *Sahoury v. Meredith Corp.*, No. 11-5180 (KSH), 2012 WL 3185964, at *8-10 (D.N.J. Aug. 2, 2012) ("Because the complaint states only a legal conclusion—that defendants used their names and likeness 'for trade purposes'—the misappropriation claim fails.").

At most, Plaintiff's allegations, as well as the ad at issue, demonstrate that MPI distributes content for third parties, including FirstMet, and that FirstMet's use of Plaintiff's likeness was not for MPI's own benefit. As with the statutory immunity provision, a publisher that merely distributes an ad allegedly violating a person's right of publicity is only a passive actor, and cannot incur liability based on that conduct standing alone. The holding in *Cabaniss v. Hipsley*, 151 S.E.2d 496, 506 (Ga. Ct. App. 1966), is instructive. In that case, the court refused to hold a magazine publisher liable for infringing the plaintiff's right of publicity merely by distributing an

advertisement created by a third party. The court reasoned that: (1) the publisher's "participation was *merely passive*" and the magazine was "merely the conduit through which [the ad appeared]"; and (2) any "appropriation . . . *did not inure* to [the publisher's] benefit, . . . but to that of his advertiser." *Id*. (emphasis added).

MPI, like the defendant in *Cabaniss*, was merely a passive distributor of the FirstMet ad at issue. Nothing in Plaintiff's Second Amended Complaint supports an allegation that MPI benefited from FirstMet's use of Plaintiff's image in an ad promoting FirstMet's dating app. *See also Newcombe v. Adolf Coors Co*., 157 F.3d 686, 693 (9th Cir. 1998) ("use of [plaintiff's] likeness" did not "directly benefit[] [defendant magazine publishers] because the benefit they received—payment for the advertising space—was *unrelated to the contents of the advertisement*" (emphasis added)); *see also Doe*, 817 F.3d at 26 (finding no misappropriation of likeness where the publisher did not use pictures to advertise their own services).

Thus, even if Plaintiff's common-law right-of-publicity claim was not abrogated by the Pennsylvania Act, her failure to provide factual support is fatal to that claim, which should be dismissed with prejudice.

## IV. CONCLUSION

MPI respectfully submits that Plaintiff's Second Amended Complaint should be dismissed with prejudice in its entirety. MPI is immune from liability under the Pennsylvania Act, the Act has abrogated Plaintiff's common-law right-of-publicity claim, and Plaintiff's pleadings are insolubly conclusory and would provide no factual support for the underlying claims even if those claims were available.

DATED: March 4, 2022

Respectfully Submitted,

ROYER COOPER COHEN BRAUNFELD, LLC

BY: /s/ *Barry L. Cohen*

Barry L. Cohen, Esquire (PA Bar 68864)
Two Logan Square
100 North 18th Street, Suite 710
Philadelphia, PA 19103
Telephone: (484) 362-2628
Facsimile: *(484) 362-2630*
Email: bcohen@rccblaw.com

Kilpatrick Townsend & Stockton LLP
*Dennis Wilson, Esquire (CA Bar No. 155407)
9720 Wilshire Blvd PH
Beverly Hills, CA 90212-2018
Telephone: 310-248-3830
Facsimile: 310-860-0363
Email: DWilson@kilpatricktownsend.com

*Admitted Pro Hac Vice*

Kilpatrick Townsend & Stockton LLP
*Tywanda Lord, Esquire (GA BAR No. 006848)
1100 Peachtree Street Suite 2800
Atlanta, Georgia 30309
Telephone: 404-815-6500
Facsimile: 404-541-3235
Email: Tlord@kilpatricktownsend.com

*Admitted Pro Hac Vice*

*Attorneys for Defendant Meta Platforms, Inc. f/k/a Facebook, Inc.*