## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KAREN HEPP,** | : | |
| | : | Case No. 19-CV-4034 (JMY) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **STIPULATED ORDER RE:** |
| **META PLATFORMS, INC. f/k/a** | : | **DISCOVERY OF** |
| **FACEBOOK, INC.,** | : | **ELECTRONICALLY STORED** |
| | : | **INFORMATION** |
| Defendant. | : | |

### 1.     PURPOSE

This Order will govern discovery of electronically stored information ("ESI") ("eDiscovery") in this case as a supplement to the Federal Rules of Civil Procedure, and any other applicable orders and rules.

### 2.     COOPERATION AND PROPORTIONALITY

The parties are aware of the importance of cooperation and commit to cooperate in good faith throughout the matter to promote the "just, speedy, and inexpensive determination" of this action, as required by Fed. R. Civ. P. 1. The parties' cooperation includes propounding reasonably particular discovery requests, identifying appropriate limits to eDiscovery, including limits on custodians, identifying relevant and discoverable ESI, establishing time periods for eDiscovery and other parameters to limit and guide preservation and eDiscovery issues. The failure of counsel or the parties to cooperate in facilitating and reasonably limiting eDiscovery requests and responses will be considered in cost-shifting determinations. The parties agree to use reasonable, good faith, and proportional efforts to preserve, identify and produce relevant and discoverable information consistent with Fed. R. Civ. P. 26(b)(1).

### 3.     LIAISON

Each party shall designate or make available, an individual or individuals as eDiscovery Liaison(s) who must:

(a)  be prepared to meet and confer on eDiscovery-related matters and to participate in eDiscovery dispute resolution;

(b)  be knowledgeable about the party's eDiscovery efforts;

(c)  be, or have reasonable access to those who are, familiar with the party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and

(d)  be, or have reasonable access to those who are, knowledgeable about the technical aspects of eDiscovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology.

**4.    PRESERVATION**

Each party is responsible for taking reasonable and proportionate steps to preserve relevant and discoverable ESI within its possession, custody or control consistent with Sedona Conference Principle 6 which instructs that "[r]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information."[1] The parties have discussed their preservation obligations and needs and agree that preservation of relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

(a)  Parties will preserve non-duplicative, relevant information currently in their possession, custody, or control; however, parties are not required to modify, on a going-forward basis, the procedures used by them in the usual course of business to back up and archive data.

(b)  Subject to and without waiving any protection described in Section 4(A) above, the parties agree that:

---

[1] The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 SEDONA CONF. J. 118 (2018).

1.    Only ESI created or received after January 1, 2017 and before December 31, 2021 will be preserved;

2.    The parties will discuss and agree on the sources and types of relevant ESI they believe should be preserved; and

3.    The parties will agree on the number of custodians per party for whom ESI will be preserved. The parties agree to meet & confer to discuss additional custodians as reasonably necessary (i.e., when specific evidence warrants expanding the initial custodian list).

(c)    The following data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B), and unwarranted extraordinary measures will not be taken to preserve ESI from these sources, which will be retained pursuant to standard business processes, but not otherwise preserved, searched, reviewed, or produced, unless ordered by the Court upon a motion of a party:

1.    backup systems and/or tapes used for disaster recovery; and

2.    systems no longer in use that cannot be accessed by using systems currently in use by the party.

(d)    The following data types are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B), and unwarranted extraordinary measures will not be taken to broadly preserve this ESI, and instead, it will be retained pursuant to standard business processes, but not otherwise preserved, searched, reviewed, or produced, unless ordered by the Court upon a motion of a party:

1.    Voice messages;

2.    Instant messages and chats that are not chronicled to an email archive system;

3.    Sound recordings, including, without limitation, .mp3/.mp4 and .wav files.

4.      Video recordings; and

5.      Information solely contained on mobile devices.

(e)      In addition to the agreements above, the parties agree data from these sources (a) could contain relevant information but (b) under the proportionality factors, should not be preserved:

1.      Deleted, slack, fragmented, or unallocated data only accessible by forensics.

2.      Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3.      On-line data such as temporary internet files, history, cache, cookies, and the like.

4.      Data in metadata fields that are frequently updated automatically, such as last-opened or last modified dates.

5.      Mobile device activity logs.

6.      Server, system, or network logs.

7.      Dynamic fields in databases or log files not stored or retained in the usual course of business.

8.      Information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and/or disposition of computer equipment by the party.

9.      Other forms of ESI whose preservation requires unreasonable, disproportionate, and/or non-routine, affirmative measures that are not utilized in the ordinary course of business.

(f)      The Parties acknowledge that Meta Platforms, Inc. is subject to various privacy regulations and court orders that require the disposition of identifiable user data. To the extent that identifiable user data subject to routine disposition as required by privacy regulations and court orders is identified as relevant to the claims or defenses in this case, the parties will meet and confer on preservation of such

information as it exists at that time, including the feasibility of such preservation and the type and import of the user data implicated.

5.    **SEARCH**

The Parties agree that each Producing Party is best situated to determine the most appropriate method or methods for that Producing Party to search, collect, cull, and produce documents responsive to discovery. The parties agree that they will disclose the method or methods they are employing to identify the appropriate set(s) of documents for review and production.

(a)    Search Terms: Each Producing Party may use search terms to locate potentially relevant documents for collection and/or culling after collection. Each Producing Party will develop its own narrowly tailored search terms to locate its relevant documents that are responsive to discovery. After applying its search terms to the targeted document set(s), that Producing Party will review a statistically valid (95% ±5), randomly generated sample set of the documents that do not hit upon any search terms ("Null Set Sample") and produce to the Requesting Party the relevant, responsive, non-privileged documents. The Producing Party will develop appropriate new search term(s), if needed, to capture any relevant documents located within the Null Set Sample. The Producing Party will then apply the original and new search terms to the targeted document set and disclose the original and new terms to the Requesting Party. If the requesting party objects to the sufficiency of the Producing Party's original and new search terms, the Parties agree to conduct one round of the four-step process identified below:

1.    The Requesting Party may request one additional Null Set Sample to be reviewed by the Producing Party;

2.    The Producing Party will review the additional Null Set Sample and produce all relevant, responsive, non-privileged documents to the Requesting Party;

3.      The Requesting Party can propose additional search terms that would capture the relevant, responsive, non-privileged documents from the additional Null Set Sample; and

4.      The Producing Party will apply the search terms to evaluate their reasonableness.

If the search terms proposed by the Requesting Party have an unreasonably high or overbroad yield, the Producing Party may review a randomly generated 95/5 confidence level/margin of error sample set of documents to determine the overbreadth of the proposed search terms. Where appropriate, the Producing Party may develop alternative search terms that are more narrowly tailored to capture the relevant, responsive, non-privileged documents from the additional Null Set Sample. No additional iterations of search term development will be conducted.

(b)     Technology Assisted Review. A Party may use technology assisted review (TAR) or similar advanced analytics to filter out or exclude non-responsive documents.[2] A Receiving Party may request the following information about a Producing Party's use of TAR or similar advanced analytics limited to the following: (1) the custodians and data sources against which TAR or advanced analytics will be run; (2) the TAR or advanced analytics tool being used and vendor; and (3) the measure(s) used to validate the results of the TAR methodology or similar advanced analytics.

(c)     Nothing in this Order may be construed or interpreted as precluding a producing party from performing a responsiveness review to determine if documents captured by search terms are in fact relevant to the requesting party's discovery requests. Similarly, nothing may be construed or interpreted as precluding a producing party from performing, by any means, a privilege review of documents determined to be

---

[2] A producing Party need not disclose whether it is using TAR, Continuous Active Learning (CAL), or any other predictive coding to prioritize the review of documents collected.

relevant. Further, nothing in this Order requires the production of documents captured by any search term that are irrelevant to the Requesting Party's request, privileged or otherwise protected from disclosure.

(d)     Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. For example, Hash values may be filtered out during this process using the National Software Reference Library ("NSRL") NIST hash set list.

(e)     De-Duplication. Each party is required to produce only a single copy of a responsive document and each party may de-duplicate responsive ESI (e.g., based on MD5 hash values at the document level) across Custodians. For emails with attachments, the hash value is generated based on the parent/child document grouping. To the extent that de-duplication through MD5 hash values is not possible, the parties shall meet and confer to discuss any other proposed method of de-duplication.

(f)     Email Threading. Where multiple email messages are part of a single chain or "thread," a party is only required to produce the most inclusive message ("Last In Time Email") and need not produce earlier, less inclusive email messages or "thread members" that are fully contained, including attachments and including identical senders and recipients, within the Last In Time Email. Only email messages for which the parent document and all attachments are contained in the Last In Time Email will be considered less inclusive email messages that need not be produced.

(g)     On-site inspection will not be permitted absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

## 6.     PRODUCTION FORMATS

The parties agree to produce documents in the formats described in Appendix 1 to this Order. If particular documents warrant a different format, the parties will

cooperate to arrange for the mutually acceptable production of such documents. The parties agree, to the extent practicable, not to materially degrade the searchability of documents as part of the document production process.

7.    **PHASING**

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to phase the production of ESI. Following the initial production, the parties will continue to prioritize the order of subsequent productions.

8.    **DOCUMENTS PROTECTED FROM DISCOVERY**

(a)    The Parties and Court have entered a separate Order under Fed. R. Evid. 502(d) that governs the production of documents protected from discovery.

(b)    The parties have submitted a separate Stipulated Protective Order that governs the production of documents protected from discovery.

(c)    Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

(d)    The parties have submitted a separate Stipulated Protective Order that governs the production of documents protected from discovery.

(e)    Communications involving or work product associated with inside or outside counsel for the parties related to this case that post-date the filing of the complaint need not be placed on a privilege log.

(f)    Parties agree to log only the Last In Time Emails in a thread and need not log earlier, less inclusive email messages or "thread members" that are fully contained within the Last In Time Email.

(g)    Communications may be identified on a privilege log by category, rather than individually, if appropriate.

(h)    The parties agree to furnish logs that comply with Fed. R. Civ. P. 26(b)(5) and any other legal requirements for all documents withheld or redacted on the basis of

privilege, attorney work product, or similar doctrines. Privilege logs will be produced after all productions are complete, but prior to the close of discovery.

(i)     The parties agree to meet and confer concerning specific content of and procedures to be used related to production of the parties' privilege logs.

(j)     Nothing in this Order requires disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

**9.     MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.


Dated:  August 23, 2022          */s/Samuel B. Fineman*
                                 Samuel B. Fineman, Esq.
                                 COHEN FINEMAN, LLC
                                 1999 Marlton Pike, E., Suite 4
                                 Cherry Hill, NJ  08003
                                 sfineman@cohenfineman.com

                                 Counsel for Plaintiff


Dated:  August 23, 2022          */s/Tywanda Harris Lord*
                                 Dennis Wilson, Esq. *(admitted pro hac vice)*
                                 KILPATRICK TOWNSEND & STOCKTON LLP
                                 1801 Century Park East, Suite 2300
                                 Los Angeles, CA  90067
                                 dwilson@kilpatricktownsend.com

                                 Tywanda Harris Lord, Esq. *(admitted pro hac vice)*
                                 KILPATRICK TOWNSEND & STOCKTON LLP
                                 1100 Peachtree Street, Suite 2800
                                 Atlanta, GA 30309
                                 tlord@kilpatricktownsend.com

Barry L. Cohen, Esq.
ROYER COOPER COHEN BRAUNFELD LLC
Two Logan Square
100 North 18th Street, Suite 710
Philadelphia, PA  19103
bcohen@rccblaw.com

Counsel for Defendant

**IT IS ORDERED** that the foregoing Agreement is approved.

Dated:  August 23, 2022        /s/ John Milton Younge
_____

UNITED STATES DISTRICT COURT JUDGE

§